**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Pamela E. Prescott, Esq. (SBN: 328243)
pamela@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Kaitlyn Roblyer

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KAITLYN ROBLYER, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**PAULA'S CHOICE, INC.; PAULA'S CHOICE, LLC; and, CONOPCO, INC. d/b/a UNILEVER,**<br><br>**Defendants.** | Case No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br><br>1) **CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA"), CAL. CIV. CODE §§ 1750, *ET SEQ.*;**<br>2) **CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*;**<br>3) **VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL"), CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*;**<br>4) **BREACH OF EXPRESS WARRANTY**<br>5) **UNJUST ENRICHMENT;**<br>6) **NEGLIGENT MISREPRESENTATION; AND,**<br>7) **INTENTIONAL MISREPRESENTATION.**<br><br>**JURY TRIAL DEMANDED** |

# INTRODUCTION

1.    Plaintiff Kaitlyn Roblyer ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of defendants Paula's Choice, Inc., Paula's Choice, LLC, and Conopco, Inc. d/b/a Unilever ("Unilever") (collectively "Paula's Choice" or "Defendant") concerning unlawful marketing and labeling of Defendant's skincare products, with the designation and representation that the products are/were made in the USA and/or manufactured in the USA without clear and adequate qualification of the foreign ingredients and components contained therein, as required by federal rules and California laws.

2.    The unlawfully represented products are sold through various channels, including, but not limited to, direct-to-consumer sales on the Defendant's website, third-party platforms such as Amazon.com, professional haircare salons, and third-party merchants operating in brick-and-mortar stores like Sephora, Nordstrom and elsewhere.

3.    Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by her attorneys.

4.    As stated by the California Supreme Court in *Kwikset v. Superior Court*, 51 Cal. 4th 310, 328-29 (2011):

> **Simply stated: labels matter.** The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities that may come to associate with a particular source. . .In particular . . . **the "Made in U.S.A." label matters**. A range of motivations may fuel this preference, from desire to support domestic jobs or labor conditions, to simply patriotism. The Legislature has recognized the

materiality of this representation by specifically outlawing deceptive and fraudulent "Made in America" representations. (Cal. Bus & Prof. Code section 17533.7; see also Cal. Civ. Code § 1770, subd. (a)(4) (prohibiting deceptive representations. Of geographic origin)). The objective of section 17533.7 "is to protect consumers from being misled when they purchase products in the belief that they are advancing the interest of the United States and the industries and workers. . .." (emphasis added).

5.     Paula's Choice's products are marketed and labeled with the express, unqualified representation that they are "Made in USA," (or similar terminology),[1] on a prominent and conspicuous location on the product label as well as in their marketing. This claim appears on and/or regardging nearly every product manufactured, sold, or distributed by Defendant, including the product purchased by the Plaintiff.

6.     Contrary to Defendant's express representations and its failure to clearly and adequately qualify those representations, the product purchased by Plaintiff is substantially and materially composed of indispensable foreign ingredients.

7.     Plaintiff purchased one of Paula's Choice's best known products, its 2% BHA Liquid Exfoliant (the "Product"), which is labeled, marketed and sold to consumers as "Made in USA," (or similar terminology), as further discussed herein.

8.     However, the Product is made with numerous ingredients and components, that are not grown, sourced or otherwise made in the United States.

9.     Defendant's conduct of advertising and selling deceptively labeled and marketed products bearing the representation that such products are "Made in USA" violates: (1) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*.; (2) California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*.; (3) California's False Advertising Law ("FAL"), Bus. &

---

[1] For purposes of this Complaint, the term "Made in USA" shall be understood to encompass all synonymous phrases and representations.

Prof. Code § 17500, *et seq*.; constitutes (4) breach of express warranty; (5) unjust enrichment; (6) negligent misrepresentation; and (7) intentional misrepresentation. Such conduct also amounts to a violation of 16 C.F.R. § 323 (Federal Trade Commission 2021) (the "MUSA Rule").

10.     This conduct caused Plaintiff, and other similarly situated, damages, and requires restitution and injunctive relief to remedy and prevent future harm.

11.     In addition to the unqualified "Made in USA" representation on the Product, Paula's Choice's other skincare products—including, but not limited to, those listed in **Exhibit A** (together with the Product, the "Class Products")—also are marketed and labeled with the same unqualified "Made in USA" representation or a similar unqualified U.S. origin claim.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), because: (1) there is minimal diversity, including because Plaintiff is a citizen of California, while Defendant Paula's Choice, Inc., is a Washington corporation with principal place of business in New Jersey, Defendant Paula's Choice, LLC is a Washington limited liability company with its principal place of business in New Jersey, and Defendant Conopco, Inc. is a New York corporation with its principal place of business in New Jersey; (2) the amount in controversy in this matter exceeds $5,000,000, exclusive of interest and costs; and (3) there are more than one hundred (100) people in the putative class.

13.     Venue is proper in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the Sacramento County, California, which is within this judicial district; and (ii) Defendant conducted business within this judicial district at all relevant times.

//

//

## PARTIES

14.    Plaintiff is a natural person, an individual citizen and resident of Sacramento County, California, and within this judicial district.

15.    Defendant Paula's Choice, Inc. is a corporation that is organized and exists under the laws of the State of Washington with a principal place of business in the State of New Jersey at 700 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.[2]

16.    Defendant Paula's Choice, LLC is a limited liability company that is organized and exists under the laws of the State of Washington with a principal place of business in the State of New Jersey at 700 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.[3]

17.    Defendant Conopco, Inc. d/b/a Unilever is a corporation that is organized and exists under the laws of the State of New York with a principal place of business in the State of New Jersey at 111 River Street, 8th Floor, Hoboken, New Jersey 07030.[4]

18.    Plaintiff alleges that at all times relevant herein Defendant conducted business within the State of California, in the County of Sacramento, and within this judicial district.

19.    Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendant, respectively.

## NATURE OF THE CASE

20.    Defendant is among the leading skincare companies in the United States. Founded in 1995, Paula's Choice experienced substantial commercial success, ultimately leading to its 2021 acquisition by Unilever—one of the world's largest consumer products companies—for approximately $2 billion.[5] Paula's Choice is

---

[2] According to the California Secretary of State's website.
[3] *Id*.
[4] *Id*.
[5] *See* https://wwd.com/feature/unilever-buying-paulas-choice-skin-care-1234844601/

estimated to generate over $300 million in annual revenue.[6]

21.    Unilever is one of the largest consumer goods companies in the world, with a diverse portfolio of more than 400 brands spanning personal care, nutrition, home care, and ice cream. In 2023, Unilever reported annual revenues of approximately $64 billion, placing it among the top global consumer goods firms. This figure exceeds the gross domestic product of more than half of the world's countries, underscoring the company's substantial economic footprint, operational sophistication, and access to vast resources.

22.    Given Defendant's long-standing presence in the consumer products industry, its access to extensive resources and operational sophistication—including those of its parent company, Unilever—and the rigorous due diligence typically conducted in corporate acquisitions, particularly with respect to marketing claims, it is difficult to comprehend how Defendant and Unilever could so blatantly disregard well-established laws, rules, and regulations governing the labeling, marketing, and sale of skincare products bearing unqualified "Made in USA" claims.

23.    At all relevant times, Defendant made and continues to make material misrepresentations regarding the Class Products.

24.    Specifically, Defendant advertised, marketed, promoted, labeled and sold the Class Products as "Made in USA" without disclosing the use of foreign ingredients, when in fact this claim was false.

25.    Although Defendant represented that the Class Products were "Made in USA" without qualification, the products are wholly or substantially made with ingredients and components sourced, grown, or manufactured outside the United States.

26.    Each consumer, including Plaintiff, was exposed to the same material misrepresentations and similar labels were placed on all Class Products sold—and

---

[6] *Id.*

currently sold—throughout the United States, including in California.

27.    Federal rules and regulations regarding the use of "Made in the United States" claims— including any synonymous claims, whether express or implied— are well-established and clearly defined with respect to products and services.

28.    Specifically, the MUSA Rule clearly defines the meaning of "Made in the United States," including synonymous phrases,[7] as well as when it can be used without clear and adequate qualification notifying consumers that the good or service in question contains or is made with ingredients or components that are not made or sourced in the United States.[8]

29.    As a consequence of Defendant's unfair and deceptive practices, Plaintiff and other similarly situated consumers purchased the Class Products under the false impression and in reliance upon Defendant's representations that the Class Products were actually made in the United States with ingredients and components sourced from within the United States.

30.    As a result, Plaintiff and other similarly situated consumers overpaid for the Class Products, purchased the Class Products over the products of competitors, and/or purchased the Class Products under the belief that the product they purchased was made in the United States and did not contain numerous ingredients and components from outside the United States.

31.    Despite the clearly established and well-defined federal rules regarding

---

[7] *See* 16 C.F.R. § 323.1(a) ("The term Made in the United States means <u>any unqualified representation,</u> express or implied, <u>that a product or service,</u> or a specified component thereof, <u>is of U.S. origin,</u> including, but not limited to, a representation that such product or service is 'made,' 'manufactured,' 'built,' 'produced,' 'created,' or 'crafted' in the United States or in America, or any other unqualified U.S.-origin claim.") (emphasis added).

[8] *See* 16 C.F.R. § 323.2 Prohibited Acts ("In connection with promoting or offering for sale any good or service, in or affecting commerce as 'commerce' is defined in section 4 of the Federal Trade Commission Act, 15 U.S.C. 44, <u>it is an unfair or deceptive act or practice</u> within the meaning of section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. 45(a)(1), <u>to label any product as Made in the United States unless</u> the final assembly or processing of the product occurs in the United States, all significant processing that goes into the product occurs in the United States, and <u>all or virtually all ingredients or components of the product are made and sourced in the United States.</u> (emphasis added).

"Made in the United States" claims, Defendant falsely, unfairly and deceptively advertised, marketed and sold its products, including the Product purchased by Plaintiff, as "Made in the USA" without clear and adequate qualification informing consumers of the presence of foreign ingredients and/or components as further discussed herein.

32.    Had Plaintiff and other similarly situated consumers been made aware that the Class Products contained a substantial amount of ingredients sourced from outside of the United States, they would not have purchased the Class Products.

33.    As a result of Defendant's false, unfair, and deceptive statements and/or their failure to disclose the true nature of the Class Products, along with the other conduct described herein, Plaintiff and similarly situated consumers purchased hundreds of thousands of units of the Class Products in California and across the United States, and have suffered and continue to suffer harm, including the loss of money and/or property.

34.    Defendant's conduct, as alleged herein, violates several California laws, as detailed below.

35.    This action seeks, among other things, equitable and injunctive relief, public injunctive relief, restitution of all amounts unlawfully retained by Defendant, and disgorgement of all ill-gotten profits resulting from Defendant's alleged wrongdoing.

36.    Unless enjoined, Defendant's unfair, deceptive and unlawful conduct will continue into the future, and Plaintiff and members of the Class will continue to suffer harm.

## FACTUAL ALLEGATIONS

37.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully stated herein.

38.    Defendant produces, markets, and advertises various products, including the Product purchased by Plaintiff, as "Made in USA," without clear or adequate

qualification.

39.    Importantly, neither federal nor state law in the United States requires the use of the phrase "Made in USA" or any synonymous representation on the type of products sold by Defendant. In other words, such representations are entirely voluntary and serve marketing or product positioning purposes, rather than fulfilling any regulatory or legal requirement.

40.    However, when a company such as Defendant elects to use such representations, their use is governed by the applicable laws and regulations set forth herein.

41.    Regardless of where Defendant displayed or promoted its unqualified "Made in the USA" representations, such claims violate the MUSA Rule, as set forth above. In the case of the Class Products, however, the misrepresentation is especially significant because it appears prominently on both the product packaging and in marketing materials, underscoring its intended impact on consumers.

42.    For example, Defendant marketed its entire product line as "Made in the USA" by prominently displaying a large icon bearing that representation—in two distinct forms—on the homepage of its Amazon storefront, the most visible and impactful location for consumer packaged goods companies to make such claims on the platform.

43.    Consumer packaged goods companies typically reserve their Amazon storefront homepages for highlighting their most important and highest-value brand-wide selling points.

44.    In the case of the Class Products, Defendant's unqualified U.S. origin claim appeared directly beneath a scrolling featured product or ingredient banner on Defendant's Amazon homepage. In this section, Defendant displayed a circular badge with the phrase "MADE IN USA" repeated twice around a central star icon, accompanied by the bold statement "Formulated & Manufactured in the USA." This representation was grouped with other prominent marketing claims, such as

"Cruelty Free & Leaping Bunny Certified" and "100% Recyclable Through Terracycle," reinforcing the impression that U.S. origin was a key brand attribute and material selling point.

45.    Below is an example of the aforementioned—or materially similar—representation displayed by Defendant on its Amazon homepage, as well as on individual product pages for the Class Products:

*Defendant's Amazon Homepage*



*The Product's Amazon Sales Page*





*Defendant's 1% Retinol Treatment Cream Amazon Sales Page*



**Paula's Choice CLINICAL 1% Retinol Treatment Cream with Peptides, Vitamin C & Licorice Extract, Anti-Aging & Wrinkles, 1 Ounce**

Visit the Paula's Choice Store

4.3 ★★★★☆  |  4,561 ratings  |  Search this page

3K+ bought in past month

**$65**.00  ($65.00 / Fl Oz)

FREE Returns ∨

Get $10 off instantly: Pay $55.00 upon approval for the Amazon Store Card.

Size: **Full Size - 1.0 Fl Oz**

| 0.16 Fl Oz (Pack of 1) | Full Size - 1.0 Fl Oz |
|---|---|
| $15.00 | $65.00 |
| ($93.75 / Fl Oz) | ($65.00 / Fl Oz) |

| | |
|---|---|
| Brand | Paula's Choice |
| Item Volume | 1 Fluid Ounces |
| Item dimensions L x W x H | 4.72 x 0.39 x 0.39 inches |
| Age Range (Description) | Adult |
| Active Ingredients | Hyaluronic Acid, Vitamin C, Retinol |

**About this item**

- POTENT RETINOL: This uniquely formulated anti-aging treatment's controlled-release retinol delivery system allows for even, consistent absorption that moisturizes & delivers truly youthful results.
- TARGET FINE LINES & WRINKLES: An anti-wrinkle blend of 1% retinol + licorice, oat & other soothing plant extracts help improve the look of wrinkles and fine lines without irritation.
- IMPROVE UNEVEN TONE: Skin-firming vitamin C supercharges this formula & helps steadily even, brighten & enhance skin tone for a natural radiance you can see.
- LIGHTWEIGHT HYDRATION: This weightless lotion absorbs quickly & hydrates normal, dry, combo, oily & acne-prone skin dealing with signs of aging.
- SUSTAINABLE PACKAGING: As part of our pledge to the planet, we're removing extra plastic from packaging, like shrink wrap.
- Paula's Choice Skincare makes products that work. No fragrance, no parabens, no fluff. Just effective, science-backed formulas that target any concern from wrinkles to breakouts.

*Defendant's Pore-Reducing Face Toner Amazon Sales Page*



46.    In addition to extensively and prominently marketing unqualified U.S. origin claims, Defendant also made such unqualified claims on the packaging of nearly every Class Product, as well as in a consumer-facing response within the FAQ section of its website. These representations—or materially similar ones—also appear prominently in the marketing and advertising of the Class Products on third-party reseller websites. Below are non-exhaustive examples of these

representations:





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28









47.    As a result of Defendant's unqualified U.S. origin claims in the marketing, advertising, and packaging of the Class Products, consumers, and even retailers, have been misled for years—prompting both initial and repeat purchases of products they reasonably believed were made in the United States using ingredients

and components sourced domestically.

48. Despite Defendant's prominent and unqualified representations that the Class Products were "Made in USA" (or materially similar claims), the products are substantially made with foreign ingredients—a fact that is not adequately disclosed on the labeling, as required by the MUSA Rule and California law.

49. For example, the Product purchased by the Plaintiff contains *Camellia sinensis* (tea) leaf extract[9] and *Camellia oleifera*,[10] neither of which are produced commercially in the United States. Upon information and belief, the Product also contains additional ingredients and components that are not sourced from the United States.

50. Defendant's 25% Vitamin C + Glutathione Clinical Serum contains *Vanilla planifolia* extract,[11] along with other ingredients and components that are not sourced from the United States. Despite this, its marketing and packaging claimed it was "Made (or Manufactured) in the USA" without clear and adequate qualification.

51. Defendant's 1% Retinol Treatment Cream contains Castor Isostearate Succinate[12] and *Glycyrrhiza Glabra*[13] along with other ingredients and components that are not sourced from the United States. Despite this, its marketing and packaging claimed it was "Made (or Manufactured) in the USA" without clear and

[9] *See* https://www.fao.org/faostat/en/#data/QCL/visualize (Select Item: Tea leaves. According to the Food and Agriculture Organization of the United Nations, tea is not produced in commercial quantities in the United States.)

[10] *See* https://en.wikipedia.org/wiki/Tea_seed_oil ("*Camellia oleifera* is grown mainly in China for vegetable oil.")

[11] *See* https://journals.flvc.org/edis/article/view/134682 ("The United States is the world's largest importer of vanilla beans, but domestic production is minimal. Southern Florida has a favorable growing environment for vanilla cultivation. Though currently there is no commercial production of vanilla in southern Florida…")

[12] *See* https://www.fao.org/faostat/en/#data/QCL/visualize (Select Item: Castor oil seeds. According to the Food and Agriculture Organization of the United Nations, castor oil seeds are not produced in commercial quantities in the United States.)

[13] *See* Wahab, Shadma et al., *Glycyrrhiza glabra (Licorice): A Comprehensive Review on Its Phytochemistry, Biological Activities, Clinical Evidence and Toxicology*. 10 PLANTS 2751 (2021) (As shown in Figure 1, the United States is not identified as a commercial producer of licorice.)

adequate qualification.

52.    Similarly, Defendant's C15 Super Booster contains Hydrogenated Castor Oil,[14] along with other ingredients and components that are not sourced from the United States. Nevertheless, the Product's marketing and packaging prominently claimed it was "Made in USA" or "Manufactured in the USA," without any clear or adequate qualification regarding the origin of its foreign-sourced contents.

53.    Numerous other products sold by Defendant feature the same unqualified "Made in the USA" claims, despite containing foreign-sourced ingredients. For instance, Defendant's Discoloration Repair Serum and 0.3% Retinol + 2% Bakuchiol Treatment both contain bakuchiol—an ingredient derived from the seeds and leaves of the babchi plant,[15] which is not grown commercially in the United States. Nevertheless, both products were marketed and labeled as "Made in USA" (or with materially similar claims) without any qualifying language to disclose the foreign origin of this key ingredient.

54.    Some of the ingredients, components, and even packaging used by Defendant may be sourced either domestically or internationally—information known exclusively to Defendant at this time. As such, Plaintiff cannot presently allege the full extent of Defendant's unqualified "Made in USA" violations without the benefit of discovery. Nevertheless, Defendant's blatant and willful disregard for the applicable laws is already evident from the foregoing non-exhaustive examples.

55.    Upon information and belief, Defendant also marketed and promoted its unqualified "Made in the USA" claims across a wide range of channels beyond product packaging and retail listings. These include, but are not limited to, social media platforms, digital advertising, blog posts, and other customer-facing communications. The full scope and content of these representations are uniquely

---

[14] *See* note 11, *supra*.

[15] *See* https://en.wikipedia.org/wiki/Cullen_corylifolium ("[babchi] is native to north-east tropical Africa, the southern Arabian Peninsula, and tropical and subtropical Asia, including India and Sri Lanka.")

KAZEROUNI
LAW GROUP, APC

within Defendant's possession, custody, or control and are not presently available to Plaintiff. Accordingly, Plaintiff cannot plead the extent of these additional violations without the benefit of discovery.

56.    By failing to disclose the use of foreign ingredients and components, Defendant has unfairly and deceptively misrepresented the Class Products as being of purely U.S. origin.

57.    Defendant possesses superior knowledge of the true facts, which were not disclosed, thereby tolling the applicable statute of limitations.

58.    Most consumers have limited awareness that products—along with their ingredients and components—labeled as made in the United States may, in fact, contain ingredients or components sourced, grown, or manufactured in foreign countries. This is a material factor in many purchasing decisions, as consumers believe they are buying superior goods while supporting American companies and jobs.

59.    American consumers generally perceive products, ingredients, and components of U.S. origin as being of higher quality than their foreign counterparts.

60.    On information and belief, Defendant either charged a premium for the Class Products compared to its competitors or gained a competitive advantage by having the Class Products chosen over others based on false, unqualified "Made in the USA" claims. Federal rules and California laws are designed to protect consumers from such false representations and predatory conduct.

## FACTS SPECIFIC TO PLAINTIFF KAITLYN ROBLYER

61.    On or about January 7, 2024, Plaintiff searched online while at her home in Los Angeles County, California looking to purchase skincare products for various purposes.

62.    While browsing skincare products available for purchase online, Plaintiff encountered the Product listed for sale on Amazon. Upon reviewing the images displayed in the Product's Amazon listing, Plaintiff observed a prominent,

unqualified representation that the Product was "Made in USA" and "Formulated and Manufactured in the USA." These statements appeared without any disclosure or qualification regarding the inclusion of foreign-sourced ingredients in the Product's formulation. A depiction of this representation, or a substantially similar one, is included in ¶ 44, *supra*.

63.     Relying on the unqualified "Made in USA" representation regarding the Product, as any reasonable consumer would, and seeking to purchase a product made in the United States with U.S. ingredients—especially since it is a personal care product—Plaintiff purchased the Product for approximately $35.00 (excluding shipping and tax) from Amazon for her personal use.

64.     Plaintiff's reliance on Defendant's unqualified "Made in USA" representation was reasonable, as consumers are accustomed to seeing disclosures like "Made in the USA with globally sourced ingredients" or similar qualified variations on product packaging and in product marketing—if and when such U.S. origin claims are made. When consumers encounter an unqualified "Made in the USA" or similar claim, they reasonably assume the product contains no foreign-sourced ingredients or components.

65.     Defendant's representations regarding the Class Products were unfair, deceptive, and misleading, as the Class Products were actually made with and/or contained ingredients or components sourced, grown, or manufactured outside the United States.

66.     Accordingly, Defendant is not entitled to lawfully make unqualified representations that the products were "Made in USA" or "Manufactured in the USA."

67.     Such unqualified representations that the Product was made in the USA were material to Plaintiff's decision to purchase the Product.

68.     Indeed, in deciding to purchase the Product, Plaintiff relied on the labeling, marketing, and/or advertising prepared and approved by Defendant and its agents,

as disseminated through the Class Products' marketing, advertising and packaging containing the misrepresentations alleged herein.

69.    Had the Plaintiff known that the Product, the Class Products, and their ingredients were not actually of U.S. origin, she would not have purchased the Product.

70.    In other words, Plaintiff would not have purchased the Product but for the unqualified "Made in USA" claim on and regarding the Product and Class Products.

71.    As a result, Plaintiff was harmed because Defendant took Plaintiff's money due to its false, unqualified, unfair, and deceptive "Made in USA" representations on and regarding the Product and Class Products.

72.    Each time Plaintiff and putative Class members purchased a Class Product, they relied on Defendant's unqualified U.S. origin representations in their purchasing decisions, as is typical of most U.S. consumers.

73.    Consequently, Plaintiff and other similarly situated consumers were deceived by Defendant's actions.

74.    Plaintiff believed, at the time of purchase, that the Product was of superior quality and that she was supporting U.S. jobs, the U.S. economy, the environment, and ethical working conditions by purchasing a product made with U.S.-sourced ingredients, rather than ingredients and components sourced, grown, or made outside the United States.

75.    Ingredients and components grown or manufactured in the USA are subject to strict regulatory requirements, including, but not limited to, agricultural, environmental, labor, safety, ethical, and quality standards.

76.    Foreign sourced, grown, or manufactured ingredients and components are not subject to the same U.S. standards and may pose greater risks to consumers, the environment, and the U.S. economy. This concern is especially significant for products intended for topical use, such as personal care products.

77.    Additionally, foreign-sourced, grown, or manufactured ingredients and

components are generally of lower quality and less reliable than their U.S. origin counterparts.

78.    False, unqualified, unfair and deceptive representation that products are "Made in USA" reduces overall customer satisfaction compared to if such products were genuinely made in the U.S. using ingredients and components sourced, grown, or made domestically.

79.    Upon information and belief, the Class Products, including the Product purchased by Plaintiff, contain foreign ingredients and are not worth the purchase price paid by Plaintiff and putative Class members.

80.    The precise amount of damages will be proven at the time of trial.

81.    Plaintiff and Class members were harmed as a result of Defendant's false, unqualified, unfair and deceptive "Made in the USA" representations alleged herein.

82.    This false, unfair, and deceptive advertising of the Class Products by Defendant presents an ongoing threat to consumers, as Defendant's conduct continues to this day.

## CLASS ALLEGATIONS

83.    Plaintiff brings this action on behalf of Plaintiff and all others similarly situated.

84.    Plaintiff is a member of and seeks to represent a Class, pursuant to Federal Rules of Civil Procedure, Rule 23(a), 23(b)(2) and 23(b)(3), defined as:

> All persons in California who purchased one or more of the Class Products marketed or labeled as "Made in USA" or any derivative thereof on the product or in its marketing, and that were made with or contained ingredients or components not grown or manufactured in the USA, within four years prior to the filing of this Complaint.

85.    Excluded from the Class are Defendant's officers, directors, and employees; any entity in which Defendant have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Further excluded from the Class are members of the judiciary to whom this case is assigned, their families, and members of their staff.

86.    Plaintiff reserves the right to modify the proposed Class definition, including but not limited to expanding the Class to protect additional individuals and to assert additional sub-classes as warranted by additional investigation.

87.    <u>Numerosity</u>: The members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of members of the Class is unknown to Plaintiff at this time, based on information and belief, the Class consists of thousands of individuals within California.

88.    <u>Commonality</u>: There are questions of law and fact common to the Class, which predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, without limitation:

- The nature, scope, and operations of the wrongful practices of Defendant;

- Whether Class Products are or have been represented as being of U.S. origin without clear and adequate qualification;

- Whether Defendant negligently or intentionally misrepresented or omitted the fact that the Class Products, including the Product purchased by the Plaintiff and other Class members, were sold illegally in California;

- Whether Defendant knew or should have known that its business practices were unfair and/or unlawful;

- Whether Defendant's conduct violated the CLRA;

- Whether Defendant's conduct violated the FAL;

- Whether Defendant's conduct was "unlawful" as that term is defined in the UCL;

- Whether Defendant's conduct was "unfair" as that term is defined in the UCL;

- Whether Defendant was unjustly enriched by its unlawful, unfair and deceptive business practices;

- Whether Plaintiff and members of the Class suffered monetary damages as a result of Defendant's conduct and, if so, the appropriate amount of damages; and

- Whether Plaintiff and members of the Class are entitled to injunctive relief, including public injunctive relief.

89. <u>Typicality</u>: Plaintiff's claims are typical of those of the Class. Plaintiff and all members of the Class have been injured by the same wrongful practices of Defendant. Plaintiff's claims arise from the same course of conduct that gave rise to the claims of the Class and are based on the same legal theories in that Plaintiff purchased one or more Class Products from Defendant that was represented and/or advertised as being "Made in USA," or any derivative thereof, without clear and adequate qualification.

90. <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of members of the Class. Plaintiff's Counsel are competent and experienced in litigating consumer class actions. Plaintiff has retained counsel experienced in consumer protection law, including complex class action litigation involving unfair business practices. Plaintiff has no adverse or antagonistic interests to those of the Class and will fairly and adequately protect the interests of the Class. Plaintiff's attorneys are aware of no interests adverse or antagonistic to those of Plaintiff and the proposed Class.

91. <u>Predominance</u>: Defendant has engaged in a common course of conduct toward Plaintiff and members of the Class, in that Plaintiff and members of the

Class were induced to purchase the Class Products. The common issues arising from Defendant's conduct affecting members of the Class set out above predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

92.     Superiority: A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most members of the Class would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy.

93.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

94.     Unless the Class is certified, Defendant will retain monies received as a result of Defendant's unlawful, unfair and deceptive conduct alleged herein. Unless a class-wide injunction is issued, Defendant will also likely continue to advertise, market, label, promote and package the Class Products in an unlawful, unfair, deceptive and misleading manner, and members of the Class will continue to be deceived, misled, harmed, and denied their rights under California law.

95.     Defendant has acted on grounds that apply generally to the Class, so that Class certification is appropriate.

//

//

//

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violations of the Consumer Legal Remedies Act ("CLRA")
### (Cal. Civ. Code § 1750, *et seq.*)

96.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

97.  California Civil Code Section 1750, *et seq.,* entitled the Consumer Legal Remedies Act ("CLRA"), provides a list of "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or "services" to a "consumer."

98.  The Legislature's intent in promulgating the CLRA is expressed in Civil Code Section 1760, which provides, *inter alia,* that its terms are to be:

> Construed liberally and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protections.

99.  Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA because they extend to transactions that intended to result, or which have resulted in the sale of haircare products to consumers.

100.  Plaintiff and the Class Members are not sophisticated experts with independent knowledge of ingredient sourcing, product labeling and marketing practices.

101.  Plaintiff and Class Members are California consumers who purchased Class Products for personal, family or household purposes.

102.  Defendant is a "person" as defined by Cal. Civ. Code § 1761(c).

103.  The Class Products that Plaintiff and other Class Members purchased from Defendant constitute "goods" as defined pursuant to Civil Code Section 1761(a).

104.  Plaintiff, and the Class members, are each a "consumer" as defined pursuant to Civil Code Section 1761(d).

105.    Each of Plaintiff's and the Class members' purchases of Defendant's products constituted a "transaction" as defined pursuant to Civil Code Section 1761(e).

106.    Civil Code Section 1770(a)(2), (4), (5), (7) and (9) of the CLRA provide that:

> The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: …
> (2) [m]isrepresenting the source, sponsorship, approval, or certification of goods or services; …
> (4) [u]sing deceptive representations or designations of geographic origin in connection with goods or services;
> (5) [r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have; …
> (7) [r]epresenting that goods or services are of a particular standard, quality, or grade…; [and]
> (9) [a]dvertising goods or services with intent not to sell them as advertised.

107.    Defendant failed to comply with Civil Code Section 1770(a)(2), (4), (5), (7) and (9) by marketing and representing that its Class Products are "Made in USA," without qualification, when in fact they actually contain foreign sourced, grown or made ingredients and/or components.

108.    Plaintiff further alleges that the Defendant committed these acts with full awareness of the harm it would cause and engaged in such unfair and deceptive conduct despite this knowledge.

109.    Defendant knew or should have known that its representations about the Class Products, as described herein, violated federal regulations and state laws, including consumer protection laws, and that these statements would be relied upon

by the Plaintiff and Class members.

110.   As a direct and proximate result of Defendant's violations of Cal. Civ. Code §§ 1750, *et seq*.,  Plaintiff and each Class member have suffered harm by paying money to Defendant for the Class Products, which they would not have purchased had they known the products were unlawfully, unfairly, and deceptively labeled and marketed, and contained foreign ingredients.

111.   Plaintiff and the Class suffered monetary harm caused by Defendant because (a) they would not have purchased the Class Products on the same terms absent Defendant's unlawful, unfair and deceptive conduct as set forth herein; (b) they paid a price premium for the Class Products or chose them over competing products due to Defendant's misrepresentations and deceptive packaging, which falsely claimed the products were "Made in USA," without qualification; and (c) the Class Products contained foreign ingredients that were not properly disclosed.

112.   Plaintiff was therefore harmed because Plaintiff's money was taken by Defendant as a result of Defendant's false and unqualified "Made in USA" representation set forth on the labels of the Class Products.

113.   Plaintiff and Class members reasonably relied upon Defendant's representations regarding the Class Products, and Plaintiff and the Class reasonably expected that the Class Products would not be unlawfully labeled and marketed in a unfair, deceptive and misleading manner.

114.   Thus, Plaintiff and the Class reasonably relied to their detriment on Defendant's unfair, deceptive and misleading representations.

115.   Pursuant to California Civil Code § 1782(a), on or about August 19, 2024, Plaintiff sent Defendant a notice and demand for corrective action (the "CLRA Demand") via certified mail, informing Defendant of its violations of the CLRA and demanding that it cease and desist from such violations, as well as make full restitution by refunding all monies received in connection therewith.

116.   On or about May 13, 2025, Plaintiff sent Defendant a second CLRA Demand.

Plaintiff reserves the right to amend the Complaint under § 1782(d) to seek damages and attorneys' fees.

117. As a direct and proximate result of Defendant's violations of the CLRA, Plaintiff and members of the Class are entitled to a declaration that Defendant violated the CLRA.

118. Under Cal. Civ. Code § 1780(a) and (b), Plaintiff and the putative Class are entitled to, and hereby seek, injunctive relief to prohibit such conduct in the future, as well as damages.

119. Attached hereto as **Exhibit B** is a sworn declaration from Plaintiff pursuant to Cal. Civ. Code § 1780(d).

### SECOND CAUSE OF ACTION
### Violations of California's Unfair Competition Law ("UCL")
### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

120. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

121. Plaintiff brings this claim individually and on behalf of the Class for Defendant's violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.

122. Plaintiff and Defendant are each "person[s]" as defined by California Business & Professions Code § 17201.

123. California Business & Professions Code § 17204 authorizes a private right of action on both an individual and representative basis.

124. "Unfair competition" is defined by Business and Professions Code Section § 17200 as encompassing several types of business "wrongs," four of which are at issue here: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising."

125.   The definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

126.   Through the conduct alleged in detail above and herein, Defendant engaged in unlawful, unfair, deceptive and/or fraudulent business practices in violation of Bus. & Prof. Code § 17200, *et seq*.

### A. *"Unlawful" Prong*

127.   Defendant has committed acts of unfair competition, including those described above, by engaging in a pattern of "unlawful" business practices, within the meaning of Bus. & Prof. Code § 17200 *et seq*.

128.   Defendant is alleged to have violated California law because the Class Products are advertised and labeled as "Made in USA," without qualification, when in fact they contain foreign ingredients.

129.   Specifically, by manufacturing, distributing, and/or marketing the Class Products with false, unfair and deceptive unqualified "Made in USA" claims, Defendant violates California's CLRA, Civil Code § 1750, *et seq.*; California's Made in the USA Statute, Bus. & Prof. Code §§ 17533.7; and/or the federal Made in USA Labeling Rule, 16 C.F.R. Part 323. Defendant falsely, unfairly and deceptively represents that the Class Products are "Made in USA" without clear and adequate qualification, despite containing ingredients and/or components that are sourced, grown, or manufactured in foreign countries.

130.   Defendant has other reasonably available alternatives to further its business interests, aside from the unlawful conduct described herein, such as truthfully labeling the Class Products with clear and adequate qualifications of the foreign ingredients and components used therein.

131.   Instead, Defendant deliberately and deceptively misled consumers through unlawful and unfair practices for its own economic gain.

132.   Plaintiff and Class members reserve the right to allege additional violations of law that constitute unlawful business practices or acts, as such conduct is ongoing and continues to this day.

### B. *"Unfair" Prong*

133.   Defendant has engaged in acts of unfair competition prohibited by Bus. & Prof. Code § 17200, *et seq*.

134.   The Defendant engaged in a pattern of unfair business practices that violate both the letter and intent of the rules, regulations, and laws governing "Made in USA" claims. Specifically, it employed conduct and practices that either threaten or directly violate these laws by manufacturing, distributing, and/or marketing the Class Products with unqualified, unfair, and deceptive "Made in USA" claims. These actions constitute violations of the CLRA and both federal and state "Made in USA" statutes.

135.   Additionally, Defendant engaged in a pattern of unfair business practices that violate the wording and intent of the aforementioned statutes. These practices, which are immoral, unethical, and unscrupulous, have caused harm to consumers and run counter to public policy. The utility of such conduct, if any, is far outweighed by the damage it causes, particularly through the manufacturing, distribution, and/or marketing of the Class Products with unqualified, unfair, and deceptive "Made in USA" claims.

136.   Defendant's conduct includes, but is not limited to, manufacturing, distributing, marketing, and/or advertising the Class Products with unqualified, unfair, and deceptive U.S. origin claims. As a result: (1) the injury to consumers was substantial; (2) the injury was not outweighed by any countervailing benefits to consumers or competition; and (3) the injury was one that consumers could not have reasonably avoided.

137.   Without limitation, Defendant's knowing mislabeling of the Class Products constitutes an unfair and deceptive business practice, misleading consumers into

believing they are purchasing products made in the United States without foreign ingredients. As a result, Plaintiff could not have reasonably avoided the injury caused.

138.   Plaintiff reserves the right to allege additional conduct that constitutes further unfair business acts or practices.

### C. *"Fraudulent" Prong*

139.   Defendant violated the "fraudulent" prong of the UCL by misleading Plaintiff and the Class to believe that the Class Products and/or all its ingredients were made in the United States.

140.   Particularly, the Class Products, including the Product Plaintiff purchased on January 7, 2024, from the Amazon, were labeled, marketed and advertised "Made in USA" and "Manufactured in the USA" without any qualification, even though many of the ingredients in the Class Products, including the Product Plaintiff purchased, do not originate from the United States.

141.   Relying on the unqualified "Made in USA" language found in the Product's marketing and advertising, Plaintiff purchased the Product for approximately $35.00, excluding shipping and tax.

142.   Like Plaintiff, Class members purchased the Class Products in reliance on the unqualified "Made in USA" or similar language found on the Class Products' labels and marketing.

143.   Plaintiff and the Class are not sophisticated experts in ingredient sourcing, product labeling, or marketing practices of the Class Products. They acted reasonably in purchasing the Class Products based on their belief that Defendant's unqualified representations were truthful and lawful.

144.   Plaintiff reserves the right to allege additional conduct that constitutes further fraudulent business acts or practices.

### D. *"Unfair, Deceptive, Untrue or Misleading Advertising" Prong*

145.   Defendant's advertising is unfair, deceptive, untrue and/or misleading in that consumers are led to believe that Defendant's Class Products are "Made in USA" when Defendant's Class Products are in fact made with or contain ingredients and components that are not manufactured in the United States.

146.   Plaintiff, reasonable consumers, and the public would likely be, and, in fact were, deceived and misled by Defendant's representations and advertising as they would, and did, interpret the representation in accord with its ordinary usage, that the Class Products are actually manufactured in the United States with ingredients and components from the United States given the absence of clear and adequate qualification of Defendant's "Made in USA" representations.

147.   Additionally, Defendant's advertising is unfair, deceptive, and misleading, as it leads consumers to believe that the Class Products are "Made in USA," without clear and adequate qualification, despite containing foreign-sourced, grown, or manufactured ingredients and/or components.

148.   Plaintiff, as a reasonable consumer, and the public would likely be, and in fact were, deceived and misled by Defendant's labeling and marketing. They would, and did, interpret Defendant's unqualified representations according to their ordinary meaning—that the products are made in the USA without foreign ingredients or components.

149.   Plaintiff reserves the right to allege additional conduct that constitutes further unfair, deceptive, untrue or misleading advertising.

150.   Plaintiff and the Class lost money or property as a result of Defendant's UCL violations because, at a minimum: (a) they would not have purchased the Class Products on the same terms had they known the true facts about Defendant's representations; (b) they paid a price premium for the Class Products due to Defendant's alleged misrepresentations; and (c) the Class Products were not made in the USA with U.S.-sourced ingredients and components as represented.

151.    Defendant's alleged unlawful, unfair, and deceptive business practices, along with their unfair, deceptive, untrue, or misleading advertising, present a continuing threat to Plaintiff, the Class, and the public as Defendant continues to engage in unlawful conduct that harms consumers.

152.    Such acts and omissions by Defendant are unlawful, unfair, and/or deceptive, constituting violations of Business & Professions Code §§ 17200, *et seq*. Plaintiff reserves the right to identify additional violations by Defendant as may be uncovered through discovery.

153.    As a direct and proximate result of the acts and representations described above, Defendant has received and continues to receive unearned commercial benefits at the expense of its competitors and the public.

154.    As a direct and proximate result of Defendant's unlawful, unfair, and fraudulent conduct described herein, Defendant has been, and will continue to be, enriched by ill-gotten gains from customers, including Plaintiff, who unwittingly provided money based on Defendant's false and unqualified representations.

155.    Plaintiff was harmed because Defendant took Plaintiff's money through unqualified, unfair, and deceptive representations made regarding the Class Products.

156.    The conduct of Defendant, as described above, demonstrates the need for injunctive relief to restrain such acts of unfair competition pursuant to the California Business and Professions Code. Unless enjoined by the court, Defendant will retain the ability to, and may, continue engaging in unfair and deceptive competition and misleading marketing. As a result, Plaintiff and the Class are entitled to both injunctive and monetary relief.

157.    Plaintiff wants to purchase the Class Products again but cannot be certain that she would be misled again in the future unless and until Defendant makes appropriate changes to its Class Products' labeling and marketing as is requested herein.

158.   Pursuant to Bus. and Prof. Code § 17203, Plaintiff and the proposed Class are entitled to, and hereby seek, injunctive relief to prevent Defendant from continuing the conduct in question. Additionally, Plaintiff seeks public injunctive relief regarding Defendant's marketing and sale of products represented as "Made in USA" without clear and proper qualification.

159.   In prosecuting this action to enforce important rights affecting the public interest, Plaintiff seeks the recovery of attorneys' fees and costs pursuant to, *inter alia*, Cal. Civ. Proc. Code § 1021.5.

### THIRD CAUSE OF ACTION
**Violations of California's False Advertising Law ("FAL")**
**(Cal. Bus. & Prof. Code §§ 17500, *et seq*.)**

160.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein and further alleges as follows:

161.   California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any ... corporation ... with intent … to dispose of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement...which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

162.   Defendant's material misrepresentations and omissions alleged herein violate Bus. & Prof. Code § 17500, *et seq.* Defendant knew, or should have known, that its misrepresentations and omissions were false, unfair, deceptive, and misleading, including the unqualified representation that the Class Products were made in the United States without foreign-grown, sourced, or manufactured ingredients and components.

163. Plaintiff and the Class suffered tangible, concrete injuries as a result of Defendant's actions, as set forth herein, because they purchased the Class Products in reliance on Defendant's unqualified representations that the products were made in the United States with domestic ingredients and components.

164. As a result, pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff and members of the Class are entitled to injunctive relief, equitable relief, and restitution.

165. Further, Plaintiff and the members of the Class seek an order requiring Defendant to disclose the misrepresentations and request an order awarding Plaintiff restitution for the money wrongfully acquired by Defendant through those misrepresentations.

166. Additionally, Plaintiff seeka an order requiring Defendant to pay attorneys' fees pursuant to, *inter alia*, Cal. Civ. Proc. Code § 1021.5.

## FOURTH CAUSE OF ACTION
### Breach of Express Warranty

167. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein and further alleges as follows:

168. Defendant represented to Plaintiff and similarly situated individuals, through product packaging and marketing materials, that the Class Products were "Made in USA" without any qualification.

169. Defendant's representations regarding the Class Products' unqualified U.S. origin constitute affirmations of fact.

170. Defendant's explicit claim that the Class Products are "Made in USA" pertains directly to the nature and composition of the products, forming a fundamental part of the bargain between Defendant and purchasers.

171.   Defendant's statements—featured prominently in the advertising, marketing and labeling of the Class Products constitutes an express warranty regarding the products' U.S. origin, including their ingredients.

172.   Relying on these express warranties, Plaintiff and Class members purchased the Class Products, believing they were entirely manufactured in the United States with ingredients and components sourced from the United States.

173.   Defendant breached its express warranties because the Class Products contained foreign-sourced ingredients and components, which were not disclosed with any qualification, contradicting Defendant's representations of an unqualified U.S. origin.

174.   As a result of Defendant's breach, Plaintiff and Class members suffered harm and are entitled to recover either the full purchase price of the Class Products or the difference between their actual value and the value they would have held if entirely made in the United States with domestic ingredients and components.

175.   Plaintiff and Class members did not receive the benefit of their bargain and sustained additional injuries as alleged herein.

176.   Had Plaintiff and Class members known that the Class Products were not genuinely "Made in USA" with domestic ingredients and components, they either would not have purchased the products or would not have paid the price Defendant charged.

177.   Defendant's misrepresentation was a substantial factor in causing Plaintiff and the Class economic harm.

### FIFTH CAUSE OF ACTION
### Unjust Enrichment

178.   Plaintiff pleads this unjust enrichment cause of action in the alternative to contract-based claims.

179.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

180.   Under California law, the elements of unjust enrichment are the receipt of a benefit and the unjust retention of that benefit at the expense of another.

181.   Plaintiff and members of the Class conferred non-gratuitous benefits upon Defendant by purchasing the Class Products, which Defendant represented as made in the USA, without any qualification regarding the foreign ingredients contained therein.

182.   Plaintiff and members of the Class allege that Defendant owes them money for the unjust conduct described herein that resulted in the wrongful acquisition of funds.

183.   An undue advantage was taken of Plaintiff's and the Class's lack of knowledge of the deception, resulting in money being extracted to which Defendant had no legal right.

184.   Defendant is therefore indebted to Plaintiff and members of the Class in a specific sum—the amount of money each paid for the Class Products, which Defendant should not retain in equity and good conscience.

185.   Defendant is therefore liable to Plaintiff and members of the Class for the amount of unjust enrichment.

186.   Defendant's retention of any benefit, whether directly or indirectly collected from Plaintiff and members of the Class, violates principles of justice, equity, and good conscience.

187.   As a result, Defendant has been and continues to be unjustly enriched.

188.   Plaintiff and the Class are entitled to recover from Defendant all amounts that Defendant has wrongfully and improperly obtained, and Defendant should be required to disgorge to Plaintiff and members of the Class the benefits is has unjustly received.

189.   Defendant accepted and retained such benefits with knowledge that Plaintiff's and members of the Class's rights were being violated for financial gain. Defendant has been unjustly enriched by retaining the revenues and profits obtained from

Plaintiff and members of the Class, and such retention under these circumstances is both unjust and inequitable.

190.   As a direct and proximate result of Defendant's unlawful practices and the retention of monies paid by Plaintiff and members of the Class, Plaintiff and the Class have suffered concrete harm and injury.

191.   Defendant's retention of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class would be unjust and inequitable.

192.   Plaintiff and members of the Class are entitled to seek disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon Defendant, in a manner to be determined by this Court.

## SIXTH CAUSE OF ACTION
### Negligent Misrepresentation

193.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

194.   Defendant has represented to the public, including Plaintiff and the Class, through its marketing, advertising, labeling, and other means, that the Class Products are "Made in USA" without any qualification. This is misleading, as a substantial portion of the ingredients used in the Class Products are sourced from outside the United States.

195.   Plaintiff alleges that Defendant made these negligent, unqualified representations with the intent to induce the public, including Plaintiff and the putative Class members, to purchase the Class Products.

196.   Plaintiff and other similarly situated persons saw, believed, and relied upon Defendant's negligent, unqualified "Made in USA" representations, and purchased the Class Products based on that reliance.

197.  At all relevant times, Defendant made the negligent, unqualified representations alleged herein, knowing or reasonably should have known, that such representations were unfair, deceptive, inaccurate, and misleading.

198.  As a direct and proximate result of Defendant's negligent, unqualified misrepresentations, Plaintiff and similarly situated consumers were induced to purchase the Class Products, purchase more of them, pay a higher price, or choose them over competitors' products. These unlawful, unfair, and deceptive acts caused damages in an amount to be determined at trial for the Class Period.

## SEVENTH CAUSE OF ACTION
### Intentional Misrepresentation

199.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

200.  From an unknown date until the filing of this Complaint, Defendant knowingly represented to Plaintiff and others similarly situated, through product labeling and marketing practices, that the Class Products were "Made in USA" without qualification of foreign ingredients.

201.  Defendant acted intentionally by willfully and purposefully distributing inaccurate and unqualified marketing statements regarding the Class Products, including on their labels.

202.  However, as described above, the unqualified "Made in USA" representations are unfair, deceptive, false, and misleading.

203.  Defendant knew these representations were false and, over a period of years, continued to market and label the Class Products as "Made in USA" without qualifying the presence of foreign ingredients.

204.  Defendant further knew that retailers were marketing the Class Products in false or misleading ways, as Defendant designed, manufactured, and affixed the

product labeling to the Class Products before supplying them to the retailers and also distributed marketing materials to retailers.

205.   Plaintiff and the putative Class members saw, believed, and relied on Defendant's misrepresentations when deciding to purchase the Class Products.

206.   As a direct and proximate result of Defendant's intentional misrepresentations, Plaintiff and the putative Class members suffered damages in an amount to be determined at trial.

207.   By engaging in the acts described above, Plaintiff and the putative Class are entitled to recover exemplary or punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment against Defendant as follows, seeking equitable relief in the alternative to legal relief:

- Certification of this action as a class action;

- Appointment of Plaintiff as Class Representative;

- Appointment of Plaintiff's attorneys as Class Counsel;

- That Defendant's wrongful conduct alleged herein be adjudged and decreed to violate the consumer protection statutes asserted herein;

- An Order declaring that Defendant's conduct violated the CLRA, California Civil Code §§ 1750, *et seq.*, and awarding injunctive relief pursuant to Cal. Civ. Code § 1780(a) and (b);

- An Order declaring that Defendant's conduct violated California's Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.*; and awarding injunctive relief pursuant to Bus. & Prof. Code § 17203;

- An Order requiring Defendant to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

- An Order requiring the imposition of a constructive trust and/or disgorgement of Defendant's ill-gotten gains, compelling Defendant to pay restitution to Plaintiff and all members of the Class, and to restore to Plaintiff and Class

members all funds acquired through any act or practice declared by this Court to be unlawful, fraudulent, unfair, or deceptive; in violation of laws, statutes, or regulations; or constituting unfair competition, along with pre- and post-judgment interest thereon;

- For pre and post-judgment interest on all amounts awarded;
- For an order of restitution and all other forms of equitable monetary relief, as pleaded, including awarding such relief pursuant to Bus. & Prof. Code § 17535 and/or Bus. & Prof. Code § 17203;
- For public injunctive relief as pleaded or as the Court may deem proper;
- That Defendant be enjoined from continuing the wrongful conduct alleged herein and required to comply with all applicable laws;
- Punitive damages under Cal. Civ. Code § 3294;
- General and compensatory damages in an amount to be determined at trial;
- That Plaintiff and each of the other members of the Class recover their costs of suit, including reasonable attorneys' fees and expenses pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5; and
- That Plaintiff and the members of the Class be granted any other relief the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

208. Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: May 13, 2025

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By:  _/s/ Abbas Kazerounian___
Abbas Kazerounian, Esq.
*ATTORNEYS FOR PLAINTIFF*